**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

CIRCLE INTERNET FINANCIAL, LLC,

      Petitioner,

v.

HEKA FUNDS SICAV PLC,

      Respondent.

Civil Action No. _____

## PETITION TO CONFIRM ARBITRATION AWARD

Petitioner Circle Internet Financial, LLC ("Circle" or "Petitioner") brings this action pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 9, 207. Circle seeks confirmation of both an April 14, 2025 declaratory relief judgment in Circle's favor against Heka Funds SICAV PLC ("Heka" or "Respondent") (the "Rule 18 Ruling," Loomis Ex. 1), and the February 13, 2026 Final Award issued in Circle's favor by the Honorable Robert L. Dondero (Ret.) (the "Final Award," Loomis Ex. 2). Circle seeks entry of judgment in its favor on both the Rule 18 Ruling and the Final Award. As grounds for its petition, Circle states as follows:

### NATURE OF THE DISPUTE

1. Circle brings this petition to defend itself against Heka's longstanding pattern of suspected market manipulation, "Know-Your-Customer" violations, and vexatious lawfare. Circle requires confirmation so that the arbitration awards will become claim and issue preclusive and protect it against Heka's future misconduct. Heka opposes confirmation because it wishes to silence Circle and permit its acts to remain in darkness, all the while continuing to threaten litigation against Circle and its affiliates. Even now, Heka has threatened Circle with frivolous sanctions motions if it goes forward with filing this case. It has demanded that Circle file versions

of the arbitration award that redact virtually every single word—including section headers like "Introduction," "Conclusion," publicly reported cases, and Circle's own information. But Heka cannot use a non-confidential arbitration agreement as a muzzle to prevent Circle from defending itself. Circle has, for the sake of compromise, filed Heka's proposed redactions of the arbitration awards on the public docket as a preliminary measure to allow Heka's counsel time to file a motion to seal. But Circle will not be bullied into abandoning its rights.

2.      The arbitration awards Circle seeks to confirm arise from a scheme undertaken by Heka, an investment fund registered in Malta. Circle is a regulated financial services company that issues the stablecoin USDC, which is backed by U.S. dollar reserves. Heka opened an account with Circle and claimed that it would use the account for its arbitrage fund. It hid the fact that its largest investor was Tether, Circle's primary market competitor, which staked Heka vast sums of money to engage in profitless trading that Circle feared was manipulating the USDC market.

3.      To protect market integrity, Circle exercised its contract rights to reduce Heka's transactions limits to zero. Heka responded by threatening to file regulatory complaints against Circle and commencing arbitration against Circle, alleging claims for breach of contract, deceptive trade practices, and declaratory judgment. Heka lost on its declaratory judgment claim in a preliminary Rule 18 Ruling awarding summary judgment to Circle and ultimately lost on the remaining claims in the Final Award.

4.      But Heka has refused to accept its losses.

5.      After losing in the Rule 18 Ruling, Heka tried to open a new account with Circle's French corporate affiliate, falsely representing to that affiliate that it had an active relationship with Circle. When the subsidiary refused to open an account, Heka's arbitration counsel made

2

repeated threats to sue and report the subsidiary "to the appropriate regulatory authorities," announcing at the end of its final missive: "comply or we're filing."

6.     After losing the Final Award, Heka made clear its intent to continue its campaign of lawfare against Circle by undertaking a bad faith attempt to block Circle from ever confirming the Award.

7.     As Heka knows full well, the value of an arbitration award to a respondent like Circle is that, when confirmed, it serves as res judicata protection against future litigation. Claim preclusion protects it against Heka filing the same claim all over again. Issue preclusion protects against Heka trying to relitigate the same issue, against Circle or its affiliates, in a different posture. Many jurisdictions around the world, however, do not treat arbitral awards as preclusive unless they are first confirmed. Moreover, this arbitration award, and, importantly, the findings made by the arbitrator on a complete record, provide critical information that Circle and its affiliates (as well as other financial institutions) need to comply with their anti-money laundering, know-your-customer, and know-your-business obligations. Confirmation is necessary to obtain these benefits.

8.     Heka, however, has tried to deny Circle these benefits. Circle did not assert any claims in the arbitration; it merely defended its actions under the contract. After the arbitrator vindicated Circle, Circle asked for attorney's fees and costs based on Heka's lack of good faith in prosecuting its claims. The Final Award found that Circle's actions were justified, ruled for Circle on all claims, and granted Circle a small portion of the attorneys' fees and expert fees it incurred—$166,643.25. After the Final Award issued, Heka paid this comparatively nominal sum, and then took the position that Circle was legally precluded from confirming the Final Award because it had paid this small fee award. When Circle objected and made clear its intentions to seek confirmation to protect itself in case Heka tried to circumvent the Final Award (as it had tried to

do with the Rule 18 Ruling), Heka made repeated threats to seek "sanctions" against Circle if it even filed a Petition under the Federal Arbitration Act ("FAA").

9.      There is no good faith explanation for Heka's threats.  It has cited some inapposite, out-of-circuit cases holding that when a ***plaintiff*** seeks to confirm an award for monetary damages only and has no valid preclusion concerns, payment of the damages moots the petition.  Different considerations arise in a case like this one where the ***defendant***, which brought no claims, seeks confirmation to protect against future misconduct and litigation—a threat made all the more real by Heka's meritless sanctions threats.

10.     Nor does Heka oppose confirmation due to concerns with confidentiality.  Although it believes that no information in the Final Award and Rule 18 Ruling is confidential and worthy of redaction—the arbitration clause does not even say that the proceeding is confidential—Circle invited Heka to propose redactions to both decisions ***on four separate occasions***.  Heka ignored the first two invitations and, after requesting two weeks to consider the issue, proposed a set of redactions (Loomis Exs. 1 & 2) that blocked out almost every single word in the Award—including Section headers, neutral quotations from publicly available cases, and Circle's own information. When Circle pointed out these defects and again invited Heka to identify any actual confidential business information, the revelation of which would cause it harm, Heka declined.  Heka also declined multiple invitations to provide Circle with any authority for the proposition that arbitration awards may be sealed in their entirety.[1]

---

[1]   Circle does not believe that there is any good-faith basis for sealing these documents. But in the spirit of good faith and compromise, Circle has, at Heka's request, filed Heka's proposed redactions as placeholder exhibits until this Court can rule on whether there is any basis to seal these documents.  Heka has committed to filing a sealing motion in short order.

11.     No rational actor would ever seek sanctions on mootness grounds unless they were intent on preventing the case from ever getting to judgment.  Heka's desire to prevent the Final Award and Rule 18 Ruling from obtaining preclusive effect makes sense only if it wants to continue litigating, attacking other Circle entities, or engaging in similar schemes described in the Final Award in the future.

12.     Heka has told Circle that their business together is at an end.  That's not good enough, as Heka has been less than truthful with Circle before.  Heka was not forthcoming with Circle in 2023 when it hid relevant and material information that directly bore on its suspicious conduct that was litigated in the arbitration.  Heka also provided false information to Circle's affiliate in 2025 when it secretly reached out to an employee to open a new account, failed to disclose the existence of the arbitration, and claimed, incorrectly, that it had an ongoing relationship with Circle.

13.     Heka has also repeatedly threatened to sue when its demands are not met.  Heka threatened to report Circle to "regulators" and sue when Circle limited its ability to redeem USDC.  Heka also threatened to sue Circle's French affiliate and file regulatory complaints against it if that affiliate did not accede to Heka's demand for a new account.  Heka again threatened to sue Circle's affiliates if it did not redeem, on demand, billions of USDC under suspicious circumstances after the arbitrator had already rejected Heka's legal theory.

14.     Heka has also implied that future litigation may ensue.  In a June 30 call, counsel for Circle gave Heka advance notice of its intention to file this suit, citing the need for preclusion in future cases going forward, and for the need to cite the Final Award as a defense in case Heka filed any regulatory actions against Circle.  Counsel for Heka did not deny that it intended to file future litigation or that it had filed regulatory complaints that remain pending.  Instead, counsel

5

for Heka asked whether Circle took the position that its affiliates could invoke the Final Award as issue preclusive in future litigation. That very question suggests Heka is readying a suit against Circle's subsidiaries, and that those subsidiaries may need to invoke third-party preclusion.[2]

15.     These repeated threats show that Circle (or its affiliates) may need to use the Rule 18 Ruling and Final Award in a future defense, domestically or abroad. To perfect those defenses, Circle (and/or its affiliates) require confirmation of the Rule 18 Ruling and Final Award.

16.     But even if Heka could be taken at its word—which Circle does not believe it can—Circle still needs confirmation as protection. If Heka were to change its mind and bring a new lawsuit after the confirmation limitation period expires, Circle and its affiliates would lose the ability to invoke preclusion defensively.

17.     At bottom, this is a simple case. Heka sued Circle in arbitration and lost, and now Circle seeks summary confirmation under the FAA to convert the awards into preclusive judgments that will protect it in future actions. Heka has no defenses to confirmation. Just as a plaintiff could not moot a case by dismissing it after a jury returned its verdict, Heka's decision to pay a nominal attorney's fee does not deprive Circle of its statutory right, enacted pursuant to Congress's treaty obligations under the New York Convention, to obtain confirmation.

## THE PARTIES

18.     Petitioner Circle is a regulated payment stablecoin issuer incorporated in Delaware with its principal place of business in Boston, Massachusetts.

19.     Respondent Heka is an investment fund registered in Malta.

---

[2]  On that June 30 call, counsel for Heka requested that Circle refrain from filing this action until today, July 6. In the spirit of cooperation, Circle acceded to that request.

**JURISDICTION AND VENUE**

20.    This Court has subject matter jurisdiction over this matter pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 203, 207, and the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("New York Convention"), to which both the United States and Malta are party.

21.    Under the FAA, "[a]n action or proceeding falling under the [New York] Convention shall be deemed to arise under the laws and treaties of the United States," such that the "district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."  9 U.S.C. § 203.

22.    The New York Convention "appl[ies] to arbitral awards not considered as domestic awards in the State where their recognition and enforcement are sought."  New York Convention art. 1, ¶1.

23.    The Rule 18 Ruling and Final Award are not domestic awards, and are therefore governed by the New York Convention, because one of the parties involved (Heka) has its principal place of business outside of the United States.

24.    This Court also has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2) because Heka is a citizen of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a)(2).

25.    Heka has contended that, because it has paid the attorney's fees and costs awarded, this dispute is moot under *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021).  Heka is wrong, for five reasons.

26.    *First*, Congress expressly gave this Court subject-matter jurisdiction under 9 U.S.C. § 203 and Circle a cause of action under § 207.  *TransUnion* recognized that, although these

7

considerations are not controlling, "[c]ourts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation." 594 U.S. at 425. That is especially the case when, as here, Congress enacts a jurisdictional statute pursuant to its powers to "constitute tribunals inferior to the Supreme Court" and "make all laws which shall be necessary and proper for carrying into execution" its treaty obligations under the New York Convention. U.S. Const. art. I, § 8, cl. 9 & 18.

27.     *Second*, as the Third Circuit has explained (albeit in dicta), "[a] party to arbitration suffers an injury when he is denied the right to obtain confirmation, for it is the judgment that makes the party whole and concludes the arbitration process." *Teamsters Loc. 177 v. United Parcel Serv.*, 966 F.3d 245, 253 n.3 (3d Cir. 2020).[3] This is a cognizable injury under *TransUnion*, which requires that an "injury bear[] a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." 594 U.S. at 432 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016)). Before Congress enacted the FAA, courts would recognize and enforce arbitration awards in actions at common "law, or in equity." *Red Cross Line v. Atl. Fruit Co.*, 264 U.S. 109, 121 (1924); *see, e.g.*, *Kentucky River Mills v. Jackson*, 206 F.2d 111, 120 (6th Cir. 1953) ("Prior to the enactment of the United States Arbitration Act, an action at law on the award was the proper method of enforcing it."). This Court has also ruled that a court has

---

[3]  Heka has said that *Teamsters Local 177* "declin[ed] to opine on whether a party receiving money damages has standing to confirm after those damages are paid in full." Loomis Ex. 3 at 3 n.3.  That is both irrelevant—Circle received a fee award in a case where it was the respondent, brought no claims, and did not receive money damages—and untrue.  The court "limit[ed] [its] holding" to cases involving equitable relief but offered the above dicta to explain "an alternative way of understanding why confirmation of an arbitration award satisfies the jurisdictional existing or imminent injury-in-fact prong is to view confirmation as a statutory right created by the FAA." 966 F.3d at 253 n.3.  This reasoning is persuasive and not tied to equitable relief.

jurisdiction to confirm an arbitration award even when the award has been satisfied because "confirmation serves other important purposes aside from ensuring payment of the award." *Bennington Iron Works, Inc. v. J.P. Const. Co.*, 1996 WL 208494, at \*1 (D. Mass. Mar. 6, 1996). *Teamsters Local 177* was not a New York Convention case, and so the argument for confirmation here is stronger.

28.     *Third*, the dispute is not moot because the primary value of an arbitration award (or judgment) in the defendant's favor is that it provides claim and issue preclusive protection in future proceedings.  This court has recognized that "[w]ithout judicial confirmation, some courts have held that an arbitration award does not have preclusive effect on subsequent litigation." *Weinstein v. Levin-Fricke-Recon*, 1999 WL 397414, at \*3 (D. Mass. Apr. 29, 1999) (paying award does not moot the case).  A plaintiff cannot dismiss his claims after receiving a defense verdict so as to prevent entry of judgment and application of res judicata.  Nor can a petitioner who sues in arbitration and loses stop the award from becoming preclusive by simply paying a nominal attorney's fee and cost award.  Circle has ample reason to seek confirmation and res judicata protection given Heka's (1) fraudulent representations/omissions when it formed the account; (2) fraudulent representations to Circle's French subsidiary after losing the Rule 18 Ruling; (3) constant litigation threats when Circle declined to do business with Heka; (4) express threats to file regulatory complaints against Circle; and (5) ham-handed threats to seek sanctions if Circle even tried to seek confirmation to benefit from res judicata.  Heka has told Circle that it does not intend to do business with Circle anymore, but Circle is not required to believe it, in disregard of years of bad faith suspected market manipulation and lawfare.  As the Third Circuit explained (in dicta), "although [an award loser] states that it will comply and refrain from violating the Award

further, that promise does not have the force of a judgement." 966 F.3d at 253 n.3. Only confirmation will protect Circle from "relitigat[ing] the case" all over again. *Id.*

29. *Fourth*, and more broadly, *TransUnion* is simply inapposite. The case limited an unharmed plaintiff from suing for intangible harms under the Fair Credit Reporting Act for fear that authorizing such suits "would infringe on the Executive Branch's Article II authority" of "how to prioritize and how aggressively to pursue legal actions against defendants who violate the law." 594 U.S. at 429. That consideration has no application here. Heka sued Circle—not the other way around—for private-law claims. Circle prevailed. Now Circle simply seeks confirmation to protect itself with res judicata in future proceedings. This confirmation proceeding is about claim and issue preclusion, not the President or a Governor's ability to execute the law.

30. *Finally*, even if this case were moot (it's not), the voluntary-cessation and capable-of-repetition-yet-evading-review exceptions would apply. Heka's statements that it and Circle's disputes are at an end amount to no more than voluntary cessation, which would prevent this Court from exercising effective review and confirming any arbitration award going forward.

31. All these considerations distinguish every single case that Heka has invoked when arguing that a confirmation proceeding would be moot. None of Heka's cases involve circumstances in which the award denied declaratory relief to the claimant either.

32. This Court has personal jurisdiction over Heka because, among other things, Heka filed the underlying arbitration proceedings for a hearing to be held in Boston, Massachusetts; Heka participated in the arbitration hearings in Boston which led to the Rule 18 Ruling and Final Award; and Heka agreed to jurisdiction in Boston.

33. Venue is proper in this district pursuant to 9 U.S.C. § 204 because, among other things, the parties agreed to Boston as the seat of arbitration.

## BACKGROUND

### I.    The Underlying Dispute

34.    Circle is a regulated financial services company that issues USDC, a stablecoin backed one-for-one by U.S. dollars and other highly liquid assets.

35.    In 2022, Circle and Heka entered into a User Agreement when Heka opened a free Circle account to mint and redeem USDC.  In the User Agreement, Heka identified the account as being for use by its Elysium Global Arbitrage Fund, doing business as Heka.

36.    As a new account holder, Heka provided Circle information concerning the nature of Heka's business, its intentions in doing business with Circle by opening the account, and information about Heka's ownership.

37.    Heka did not disclose at that time, however, that Tether, Circle's primary market competitor, was Heka's biggest investor, and the primary source of Heka's capital.

38.    The parties had a business relationship in 2022 and 2023.

39.    On March 23, 2023, the parties entered into a Master Services Agreement ("MSA").

40.    Under the MSA, Circle allowed Heka the opportunity to establish an improved banking service that would facilitate its redemption and minting of USDC with Circle.

41.    Additionally, under the MSA the parties agreed to binding arbitration.  The arbitration agreement does ***not*** say that the arbitration or any award resulting from it would be confidential.  The full arbitration agreement provides:

> b. Except for claims for injunctive or equitable relief or claims regarding intellectual property rights, any dispute between the Parties related in any way to, or arising in any way from the Services or this Agreement, shall be finally settled on an individual, non-representative basis in binding arbitration in accordance with the Commercial Arbitration Rules of the applicable arbitration center listed above, as modified by this Agreement, or in accordance with rules on which the Parties may mutually agree.

11

c. Any arbitration will be conducted by a single, neutral arbitrator and shall take place in the arbitration location listed above unless otherwise mutually agreed by the Parties. The arbitrator may award any relief that a court of competent jurisdiction could award, including attorneys' fees when authorized by Legal Requirements. The arbitral decision may be enforced in any court of competent jurisdiction. An arbitral decision is subject to very limited review by a court.

42.      Under both the User Agreement and the MSA, Circle retained broad contractual authority to set and adjust transaction limits on customer accounts, and to suspend or terminate services when a customer's activity posed a risk of reputational harm or was potentially illegal.

43.      During 2023, Circle became concerned that Heka's trading activity was artificially manipulating the market for USDC.  In particular, in mid-2023, Circle began to question Heka's USDC redemption activity.  Heka told Circle that its redemption activity was the consequence of a normal arbitrage trading cycle:  Heka was purchasing USDT (a competing stablecoin issued by Tether), swapping USDT on the open market for USDC (the stablecoin issued by Circle), redeeming the USDC for dollars from Circle, and using those dollars to purchase more USDT.

44.      Circle, however, did not observe any such profitable arbitrage trade—let alone one at the scale that Heka's redemptions suggested.  When Circle first confronted Heka about its concerns, Heka claimed that it was receiving unique financial incentives from Tether.  Heka also told Circle that, but for Heka's arbitrage trading, the arbitrage opportunity would only grow.  This raised Circle's suspicions, and Circle undertook a real-world experiment to test Heka's assertions. That experiment disproved Heka's theory, and Circle limited its account.

45.      In late 2023, Circle also learned that a major cryptocurrency actor had also suspected Heka of improper conduct with USDC.  Circle thereafter decided to reduce Heka's ability to redeem USDC directly with Circle to zero to allow for additional investigation.

12

46.    In response, Heka sent a letter to Circle threatening legal action and a regulatory complaint if Circle did not remove the trade limit.

47.    Circle suspended Heka's account on December 1, 2023, referencing Circle's rights under Section 9(c) of the MSA.

48.    In February 2024, Heka petitioned to make a $100 million redemption demand with Circle, which Circle denied after Heka refused to provide information requested by Circle to assess its demand.

49.    Circle subsequently declined to renew the MSA at the end of its one-year initial term in March 2024.

## II.    The Arbitration Agreement And Proceedings

50.    Heka filed a Demand for Arbitration with JAMS on May 7, 2024, asserting claims against Circle for breach of contract, breach of the implied covenant of good faith and fair dealing, declaratory relief, and violation of the Delaware Deceptive Trade Practices Act, arising out of Circle's decisions to restrict Heka's transaction limits and to cease doing business with Heka.

51.    On July 17, 2024, Hon. Robert L. Dondero (Ret.) was appointed as the Arbitrator following a rank and strike process that was conducted pursuant to JAMS Rules.

52.    The arbitration included significant discovery by both parties, including motions to compel the production of potentially relevant information.

53.    Discovery that Heka was compelled to disclose showed that the material supplied by Heka to open its account with Circle was inaccurate and incomplete and that Heka's claims of an arm's length relationship with Tether were also false.[4]

---

[4]    While Heka desires to keep this information out of the public sphere, Heka subsequently provided similar information to Circle outside of the arbitration proceedings.

54.    Both parties filed cross-motions for summary judgment pursuant to JAMS Rule 18.

55.    On April 14, 2025, the Arbitrator ruled on those motions, granting summary judgment for Circle with respect to Heka's claims for declaratory relief and for violation of the Delaware Deceptive Trade Practices Act, and denying both sides' motions on the breach of contract and implied covenant claims—finding genuine issues of material fact, including questions of witness credibility that required a hearing as to those claims.

56.    As to the declaratory relief claim, the Arbitrator held that Circle had no obligation to enter into a new contract with Heka after the expiration of the MSA.  Loomis Ex. 1 at 20 ("[T]he Arbitrator notes there is no obligation for Respondents to enter into a new contract with Claimants after the MSA has expired. There appears no legal authority obligating them to do so.").

57.    As to the deceptive trade practices claim, the Arbitrator held that Heka lacked standing because the parties' relationship was vertical, not horizontal.

58.    The Arbitrator denied both sides' motions on the breach of contract and implied covenant claims, finding genuine issues of material fact—including questions of witness credibility regarding the distinction between permissible arbitrage and market manipulation—required resolution at an evidentiary hearing.

59.    Despite the Arbitrator's unambiguous ruling on Heka's declaratory relief claim, Heka immediately attempted to circumvent Circle's exercise of its rights to reduce Heka's transaction limits and to not renew the MSA by creating a new account with Circle's French subsidiary, Circle Internet Financial Europe SAS ("Circle Europe").

60.    As part of its application for an account with Circle Europe, Heka provided materials that were false and misleading.  Heka misstated its (then terminated) relationship with

14

Circle—falsely claiming that it then had a relationship with Circle, when that relationship had ended over a year before.

60.     Heka also did not disclose to Circle Europe that Heka was in an ongoing arbitration with Circle in the United States.  Heka used Circle Europe because it knew that it would be unable to open an account in the United States.

61.     In connection with Heka's attempts to circumvent the closing of its account with Circle in the United States and redeem USDC through Circle Europe, Heka began a campaign of threatening additional vexatious litigation against Circle Europe.

62.     On May 22, 2025, Heka sent Circle Europe a letter using the same counsel that represented it as part of the arbitration.  In the letter, Heka demanded that Circle Europe immediately open an account for Heka, redeem 10 million USDC, and "allow Heka to redeem USDC and EURC on a go-forward basis."  Loomis Ex. 4 at 5.

63.     Heka threatened that "Circle [Europe's] failure to comply with its obligations will result in an immediate report to the appropriate regulatory authorities" and warned that "Circle [Europe] can now reasonably anticipate litigation." *Id.* at 1.

64.     For several weeks between May 22, 2025 and July 28, 2025, during the pendency of this litigation and one month after losing the declaratory relief claim, Heka submitted 25 separate near-daily redemption requests totaling over USD 3.5 billion.  Each demand letter from Heka was virtually identical in form, stating that Circle Europe "must facilitate" the redemption demand, and threatening to file a regulatory complaint against Circle Europe if it did not comply with Heka's demands.

65.     Heka's redemption demands raised serious concerns.  The sheer scale and frequency of Heka's demands were inconsistent with any legitimate trading strategy and instead

15

suggested an attempt to apply improper pressure on Circle Europe to bypass standard compliance procedures.

66.    In July 2025, Heka issued an ultimatum, telling Circle Europe that it must immediately accede to Heka's redemption demands. Loomis Ex. 5. Heka asserted that "each time Circle Europe does not honor Heka's redemption demands constitutes a separate violation of MiCA" and claimed that "to date, Circle Europe has violated MiCA seventeen times." *Id.* at 2.

67.    Heka ended its letter with an ominous threat: "comply or we're filing." *Id.*

## III.    The Final Award

68.    An evidentiary hearing was held on June 3-5, 2025, at the JAMS offices in Boston, Massachusetts. The Arbitrator, both parties, and all witnesses attended in person.

69.    At the conclusion of the evidentiary portion of the hearing, the Arbitrator asked for post-hearing briefing and oral argument at a later date. Both parties also agreed to waive the 30-day requirement in the JAMS Rules for issuance of an award.

70.    In February 2026, the Arbitrator rendered the Final Award, dated as of February 13, 2026, and JAMS issued the Final Award to the parties on March 4, 2026.

71.    In the Final Award, the Arbitrator found in Circle's favor on all remaining claims.

72.    Specifically, the Arbitrator held that Circle's concerns about market manipulation were objectively reasonably based on Heka's trading behavior and, therefore, Circle did not breach the User Agreement or the MSA when it reduced Heka's transaction limits and ultimately suspended Heka's account.

73.    The Arbitrator further held that Circle did not breach the implied covenant of good faith and fair dealing, because the contracts expressly addressed the conduct at issue and left no gap for the covenant to fill.

74.    The Arbitrator re-affirmed his Rule 18 declaratory judgment in favor of Circle.

75.    Aside and apart from the ruling on the merits of Heka's claims, the Arbitrator also awarded Circle $166,643.25 in attorney's fees and expert costs based on a finding of bad faith by Heka in pursuing a $49 million damages claim for a period after the MSA had expired, notwithstanding the Arbitrator's prior Rule 18 Ruling dismissing that very claim.

## IV.    Heka's Efforts To Prevent Confirmation

76.    Heka did not give up.  It promptly paid the Final Award's nominal fee and cost component, and asserted that, because it had paid those sums, any confirmation proceeding that Circle sought to bring would be moot.  When Circle informed Heka that it disagreed and intended to seek confirmation anyway, Heka threatened Circle with sanctions.

77.    In resisting confirmation, Heka is breaching JAMS Rule 25, which provides that the "Parties to an Arbitration under these Rules shall be deemed to have consented that judgment upon the Award may be entered in any court having jurisdiction thereof."

78.    It has become clear that Heka is trying to prevent confirmation by using bogus mootness and confidentiality arguments, as well as thuggish threats, so that it can continue its manipulation and lawfare campaigns.

79.    Notwithstanding these threats, Circle sought to cooperate constructively with Heka. On May 26, 2026, Circle wrote to Heka explaining that it did not believe that the Final Award or Rule 18 Ruling should be filed under seal, asking whether Heka had any authority for the proposition that arbitration awards should be filed under seal in confirmation actions, and requesting that Heka provide it with a list of proposed redactions designed to protect confidential business information by May 29.

80.     On May 29, Heka responded with threats.  It asserted that "the entire award and any other documents from the arbitration must be filed under seal," but declined Circle's invitation to cite any authority for the proposition that they can be sealed.  Loomis Ex. 6 at 3.  It proposed no redactions.  It then closed its letter warning that if Circle even filed a confirmation proceeding—irrespective of whether it sealed all arbitration-related documents—it would "seek costs, fees, and sanctions." *Id.* at 4.

81.     Within hours, Circle's counsel responded, asking Heka to clarify "if Heka is still intending to provide [] its version of proposed redactions," and if not, asking again for "cases where the entire arbitration award itself was filed under seal."  Loomis Ex. 7 at 1.

82.     Heka ignored these questions in its email response.  It simply took the position that "there is absolutely no basis to confirm the award."  Loomis Ex. 8 at 1.

83.     Circle tried again, writing hours later to request "***for the third time***" that Heka provide "proposed redactions to the Award and the Rule 18 decision … by Wednesday, June 3," while offering to "entertain a modest request for an extension."  Loomis Ex. 9 at 2.  Circle also briefly responded to and rebutted Heka's unwarranted arguments for confidentiality. *See id.* at 2-4.

84.     Heka and Circle conferred the next day, and agreed, at Heka's request, that Heka would send proposed redactions by June 9—two weeks after Circle requested them.

85.     On June 9, Heka sent another letter arguing the merits of mootness, which largely mischaracterized the relevant law and conceded that the primary case it was relying on, a Second Circuit opinion, was, at most, only "persuasive" authority.  Loomis Ex. 3 at 2.  Heka again declined to cite any instance in which a court had sealed an entire arbitration award.

18

86.     Heka also sent proposed redactions, which are appended to the Loomis Declaration, filed with the Petition, as Exhibits 1 and 2.  The proposed redactions cover virtually every part of the Award—including section headers (like "Introduction" and "Conclusion") and publicly reported caselaw.  Heka explained as rationale by claiming that "only those sections of the award that actually grant relief should be filed publicly."  Loomis Ex. 10 at 1.

87.     On June 10, Circle wrote back to explain that the redactions were inadequate.  Heka had insisted it required "two weeks total" to assemble redactions, yet its redactions blocked out every word, including section headers like "Introduction."   Circle offered Heka another opportunity—**the fourth total**—to propose redactions "tailored to actually confidential business information that [Heka's counsel] could represent, subject to FRCP 11, would cause 'harm' if it were revealed."  Loomis Ex. 11 at 1 (quoting *Velcro Grp. Corp. v. Zijlstra*, 180 F. Supp. 3d 106, 107 (D. Mass. 2016)).

88.     Heka declined the invitation to propose redactions for the fourth time.  It wrote back on June 11 stating that "[t]he parties' respective positions are well-known, and it is clear from your June 10, 2026, email that the parties have reached an impasse regarding potential negotiated redactions to resolve our disagreement on this issue."  Loomis Ex. 12 at 1.

89.     Heka nonetheless requested that, in any confirmation action, Circle "wait at least 5 business days after filing before publicly filing the Award or Ruling itself (or disclosing their contents)," claiming that "[n]either party" can "unilaterally" decide whether to publicize these documents.  *Id.* at 1-2 (emphasis removed).

90.     Heka's arguments for confidentiality are baseless, bordering on frivolous.

91.     To the extent that it claims that the Final Award and Rule 18 Ruling refer to confidential information of the parties, Heka, of course, has no standing to demand that *Circle*'s

confidential information be redacted if Circle has no objection to filing it.  And Heka has declined to identify any of its confidential business information that requires sealing ***on four separate occasions***.  Because there is none.

92.    Heka has also said that the MSA's confidentiality obligations apply to the Final Award and Rule 18 Ruling.  That is false.  The MSA's confidentiality obligations apply only to information or materials disclosed by one Party to the other Party.  The parties did not disclose the Rule 18 Ruling or Final Award to one another.  The Arbitrator issued them.

93.    Heka asserted that the arbitration's Protective Order applies to Final Award and Rule 18 Ruling.  Not so.  That Protective Order applies only to materials "produced in discovery," and only to such materials that are designated as confidential at the time of disclosure.  The Rule 18 Ruling and Final Award do not meet either criterion.  Following the issuance of the Final Award, the Arbitrator made this point clear, ruling that the Protective Order ensures that the proceedings remain confidential only "while the matter is in arbitration," but not after.  The Arbitrator also ruled that, under Delaware law (which governs the arbitration and Protective Order), arbitral confidentiality obligations do not apply in court.  *See, e.g.*, *Soligenix Inc. v. Emergent Prod. Dev't*, 289 A.3d 667, 671 (Del. Ch. 2023).

94.    JAMS Rules, which governed the arbitration, also provide that confidentiality restrictions do not apply "in connection with a judicial challenge to or enforcement of an Award." JAMS Rule 26(a).

95.    Last, and in any case, a contractual nondisclosure agreement is not grounds to seal. "There is a well-established presumption of public access to judicial documents."  *Ferring Pharms., Inc. v. Braintree Labs., Inc.*, 215 F. Supp. 3d 114, 127 (D. Mass. 2016).  "Non-disclosure of judicial records can be justified for 'only the most compelling reasons.'"  *Id.* (quoting *F.T.C. v.*

*Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 408 (1st Cir. 1987)).  A party seeking to seal a document must provide "a particular factual demonstration of potential harm" and cannot rely on conclusory assertions.  *Standard Fin. Mgmt.*, 830 F.2d at 412 (district court did not err in releasing documents where defendants did not "point the court below to a single particularized harm which might befall them, or to any sufficiently unique reason to warrant special treatment").  Mere descriptions of documents as containing "confidential and proprietary information and trade secrets" are not sufficient without an explanation of "why any specific documents should be sealed."  *Bradford & Bigelow, Inc. v. Richardson*, 109 F. Supp. 3d 445, 449 (D. Mass. 2015).  And "[t]he more essential a document is to the Court's core function of adjudicating the parties' claims, the higher the burden to overcome the presumption of public access."  *Ferring Pharms.*, 215 F. Supp. 3d at 127.  Thus, while documents "used only in discovery" are "beyond reach," *Standard Fin. Mgmt.*, 830 F.2d at 408, for documents that "relate to and provide the foundation for dispositive motions … the public interest in access is strong and the tradition of public access is robust." *Bradford*, 109 F. Supp. 3d at 449; *cf.* D. Mass. L.R. 83.6.11 (sharply restricting grounds on which the court may seal matters relating to attorney discipline and creating limited exceptions to the presumption of public access only to protect victim privacy, privilege, grand-jury deliberations, personal privacy, and other extraordinary circumstances).

96.     Heka has repeatedly declined invitations to identify any information in the Rule 18 Ruling or Final Award that meets the test for sealing.

97.     Heka's baseless sealing demands and sanctions threats raise substantial concerns that it has not given up its prior mischief.  The arbitration began with secrets, lies, and threats. Heka has continued its pattern of vexatious litigation threats, notwithstanding Circle's persistent offers to cooperate and come to a joint sealing arrangement pending resolution by the Court.  The

only possible explanation for these actions is that Heka is seeking to block the filing of this action because it wants to relitigate the merits of the Rule 18 Ruling and Final Award or have a regulatory authority do so on its behalf.  It cannot stand for them to become claim or issue preclusive as to Heka, so now it seeks to use a non-confidential arbitration agreement as a muzzle to prevent Circle from defending itself.

98.    Notwithstanding Heka's bad faith, Circle wishes to cooperate and prosecute this action in an orderly fashion.  It has filed Heka's proposed redactions for the Rule 18 Ruling and Final Award—despite their absurd overbreadth—and will refrain from filing the complete decisions for five business days, as Heka requested, in the expectation that Heka will file a motion to seal, which the Court will have an opportunity to adjudicate.  Circle has also refrained from quoting from portions of either decision that Heka requested be redacted or citing to redacted passages in either decision.

99.    But Circle has not and cannot refrain from explaining the background of this dispute.  Those facts are central to prevailing against Heka's mootness arguments (backed with the threat of sanctions, no less).  Nor are they subject to any nondisclosure agreement or gag order.

## CAUSE OF ACTION

### Confirmation of Arbitration Award Under
### Federal Arbitration Act, 9 U.S.C. §§ 9, 207

100.    The allegations set forth above are incorporated herein.

101.    Circle and Heka agreed to arbitrate this dispute.

102.    Heka submitted the dispute to JAMS for arbitration pursuant to the parties' arbitration agreement.

103.    The Rule 18 Ruling and Final Award are valid awards issued at the conclusion of those arbitration proceedings and pursuant to the parties' agreement and JAMS Rules.

104.    The Rule 18 Ruling and Final Award are final, binding, and enforceable.

105.    Circle is entitled to a judgment confirming the Rule 18 Ruling and Final Award.

\* \* \* \* \*

For the foregoing reasons, Circle respectfully requests that this Court enter an Order:

A.    Confirming the Rule 18 Ruling and Final Award pursuant to 9 U.S.C. §§ 9 and 207;

B.    Entering judgment against Heka and in favor of Circle as set forth in the Rule 18 Ruling and Final Award; and

C.    Granting such other relief as this Court deems just and proper.


Dated:  July 6, 2026                                    Respectfully Submitted,

                                                        /s/ Alex H. Loomis
                                                        Alex H. Loomis (BBO# 699129)
                                                        QUINN EMANUEL URQUHART &
                                                        SULLIVAN, LLP
                                                        111 Huntington Avenue, Suite 520
                                                        Boston, MA 02199-3600
                                                        Tel.: (617) 712-7100
                                                        Fax: (617) 712-7200
                                                        alexloomis@quinnemanuel.com

                                                        Rajat Rana (*pro hac vice* forthcoming)
                                                        QUINN EMANUEL URQUHART &
                                                        SULLIVAN, LLP
                                                        295 5th Avenue, 9th Floor
                                                        New York, NY 10016
                                                        Tel.: (212) 849-7000
                                                        Fax: (212) 849-7100
                                                        rajatrana@quinnemanuel.com

                                                        *Counsel for Circle Internet Financial, LLC*